

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00570-CR
### NO. 02-13-00571-CR

RONALD PAUL PARKS JR.                                         APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NOS. 1330297D, 1330306D

----------

## MEMORANDUM OPINION[1]

----------

A jury found Appellant Ronald Paul Parks Jr. guilty of evading arrest or detention with a motor vehicle and unauthorized use of a vehicle, and the trial court sentenced him to eight years' confinement in each case, to run concurrently.

---

[1]*See* Tex. R. App. P. 47.4.

In his second and third of three issues, Park challenges the sufficiency of the evidence to support his convictions. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

The State had to prove that on or around June 11, 2013, Parks intentionally fled, using a vehicle, from Tom Gierling, knowing Gierling was a peace officer who was attempting to lawfully arrest or detain him, and that Parks used or exhibited a deadly weapon (motor vehicle) that in its manner of use or intended use was capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. §§ 1.07(a)(17)(B), 38.04(a) (West Supp. 2014). The State also had to prove that on or around June 11, 2013, Parks intentionally operated the vehicle knowing that he did not have the effective consent of its owner, Margaret Patterson. *See id.* § 31.07(a) (West 2011); *see also Byrd v. State*, 336 S.W.3d

2

242, 246 (Tex. Crim. App. 2011) (defining hypothetically correct jury charge against which sufficiency of the evidence is measured).

Margaret Patterson testified that someone stole her Pontiac Sunfire on June 4, 2013; she reported it to the police right away. Patterson identified the Sunfire's registration and license plate and said that she had never given Parks permission to operate her car. Although she had a security camera that recorded the car theft, she did not know who had stolen the car and had never seen Parks before trial. Patterson said that she and her daughter were the only ones with keys to the Sunfire, and they still had their keys.

Fort Worth Police Officer Tom Gierling testified that he was in a marked patrol car on June 11, 2013, when he saw a white, four-door Pontiac Sunfire go by at around 4:00 a.m. He recalled seeing a police report about it and entered the Sunfire's license plate number into his onboard computer. When Officer Gierling learned that the Sunfire had been reported stolen around six days before, he notified the police dispatcher and other officers in the area that he was behind a possibly stolen vehicle. When other officers arrived to assist him with the pursuit, Officer Gierling activated his patrol vehicle's overhead lights to initiate a traffic stop. The Sunfire's driver "punched the gas and took off" instead of pulling over and continued to speed away even after Officer Gierling activated his vehicle's siren.

During the ensuing 4.5-mile chase, the Sunfire sped over 100 miles per hour in a 40-mile-per-hour zone. The Sunfire's driver slowed into "the upper 90s"

3

when he drove through several red lights, but he never slowed to a safe speed and barely avoided colliding with a van. The chase ended when police deployed a spike strip, and the Sunfire's driver lost control and hit a guardrail, wrecking the car. The driver, subsequently identified as Parks, leapt through the driver's side window and attempted to flee on foot. After a brief chase, Parks was taken into custody. Dashboard cameras recorded the entire incident; the recordings were published to the jury. Officer Gierling did not recall seeing keys in the car but noted that he or one of his assisting officers had marked on the report that there were keys in the vehicle; he did not know who had stolen the vehicle but said that he would have investigated this if Parks had pulled over instead of running. Officer Gierling said that out of the seventy or eighty pursuits that he could recall in his fifteen years as a police officer, Parks's "would be in the top five as far as the excessive speed to get away."

With regard to his evading-arrest conviction, Parks challenges only the sufficiency of the evidence to show that he knew that the officer was attempting to lawfully arrest or detain him. We hold that the jury could have found beyond a reasonable doubt that Parks knew that Officer Gierling was attempting to lawfully stop him when, instead of stopping after Officer Gierling activated his patrol car's lights and siren, Parks accelerated the Sunfire, fled at a speed in excess of 100 miles per hour for over four miles until the vehicle wrecked, and then attempted to continue fleeing on foot. *See Griego v. State*, 345 S.W.3d 742, 751, 753 (Tex. App.—Amarillo 2011, no pet.) (stating that an actor's mental state may be

4

inferred from his actions during and after the incident and noting that speed, distance, and duration of pursuit may be factors in considering whether defendant intentionally fled); *Bunton v. State*, 136 S.W.3d 355, 360, 371 (Tex. App.—Austin 2004, pet. ref'd) (noting that appellant drove off as officers approached his vehicle and that he then ran a red light, officers pursued him at 100 miles per hour, and at least four oncoming vehicles had to swerve or pull to the right to avoid appellant's vehicle).  We overrule Parks's second issue, and based on our resolution here, we do not reach his first issue with regard to the trial court's denial of his request for a lesser-included-offense instruction in the evading arrest case.  *See* Tex. R. App. P. 47.1.

With regard to his unauthorized-use conviction, Parks argues that the State failed to present any evidence that he knew he was operating the vehicle without the owner's consent.  However, the jury could reasonably have chosen to believe Patterson's testimony that she was the vehicle's owner and that she never gave Parks permission to operate it, and it could have inferred from the circumstantial evidence, such as Parks's flight, that Parks knew that he did not have Patterson's effective consent.  *See McQueen v. State*, 781 S.W.2d 600, 604–05 (Tex. Crim. App. 1989); *see also Smith v. State*, 118 S.W.3d 838, 841, 843 (Tex. App.—Texarkana 2003, no pet.) (stating that a jury can conclude that flight is indicative of a consciousness of guilt).  Further, the jury had the responsibility to resolve any conflicting inferences with regard to the testimony about the Sunfire's keys.  *See Temple*, 390 S.W.3d at 360.  Therefore, we hold

5

that the evidence is also sufficient to support this conviction, and we overrule Parks's third issue.

Having overruled Parks's dispositive issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and GARDNER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 21, 2014

6