[Cite as *Heitmeyer v. Arthur*, 2022-Ohio-4230.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

ALICIA HEITMEYER,

     PLAINTIFF-APPELLANT,          CASE NO. 5-22-01

     v.

GARY ARTHUR,                      O P I N I O N

     DEFENDANT-APPELLEE.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2020 CV 0197

**Judgment Affirmed**

Date of Decision: November 28, 2022

APPEARANCES:

    *Dorothy L. Williams* **for Appellant**

    *William E. Clark* **for Appellee**

Case No. 5-22-01

**ZIMMERMAN, P.J.**

{¶1} Plaintiff-appellant, Alicia Heitmeyer ("Heitmeyer"), appeals the January 26, 2022 judgment of the Hancock County Court of Common Pleas awarding her $392.16 as to her conversion claim. For the reasons that follow, we affirm.

{¶2} This case stems from Heitmeyer's allegation that her father, defendant-appellee, Gary Arthur ("Gary"), established a bank account for her under the Uniform Transfer to Minors Act ("UTMA"), and that he converted the funds in that account for his own benefit.

{¶3} On June 11, 2020, Heitmeyer filed a complaint against Gary in the trial court alleging claims for conversion and punitive damages. On August 20, 2020, Gary filed an answer along with a third-party complaint against Dianne M. Arthur ("Dianne"), Heitmeyer's mother, alleging a claim for contribution. Dianne filed her answer to Gary's third-party complaint on October 2, 2020. However, Gary dismissed his third-party compliant against Dianne without prejudice under Civ.R. 41(A)(1)(a) on July 2, 2021.

{¶4} The case proceeded to a hearing before the trial court's magistrate on July 2, 2021, after which the trial court's magistrate permitted the parties to submit proposed findings of fact and conclusions of law.[1] On September 21, 2021, the trial

---

[1] Even though the transcript reflects that the hearing was a bench trial before the trial court, the record unequivocally reflects, and the parties agree, that those references in the transcript are scrivener's errors.

court's magistrate concluded that Heitmeyer failed to prove that the account is an UTMA account or that any transfer occurred while Heitmeyer "was still a 'minor' under the [U]TMA." (Doc. No. 59). However, because Heitmeyer demonstrated that she deposited two paychecks into the account, the trial court's magistrate concluded that Heitmeyer should be awarded $392.16.[2]

{¶5} On October 5, 2021, Heitmeyer filed her objections to the magistrate's decision. However, Heitmeyer failed to provide the trial court with a transcript of the hearing conducted before the trial court's magistrate. *See Fogt v. Fogt*, 3d Dist. Defiance No. 4-18-10, 2019-Ohio-1403, ¶ 12-14. Gary filed his memorandum in opposition to Heitmeyer's objections to the magistrate's decision on November 9, 2021.

{¶6} On December 13, 2021, the trial court issued its entry overruling Heitmeyer's objections to the magistrate's decision. On January 26, 2022, the trial court issued judgment in favor of Heitmeyer by awarding her $392.16 as to her conversion claim.

{¶7} On February 22, 2022, Heitmeyer filed a notice of appeal. She raises four assignments of error for our review, which we will discuss together.

**Assignment of Error No. I**

**The Trial Court Erred in Determining That the Evidence Did Not Support a Finding That the Account Was a OTMA Account.**

---

[2] Heitmeyer dismissed her punitive-damages claim under Civ.R. 41(B)(2).

**Assignment of Error No. II**

**The Trial Court Erred in Seeking Clear and Convincing Evidence When the Burden is Clearly Preponderance of the Evidence.**

**Assignment of Error No. III**

**The Trial Court Failed to Determine Ownership of the Account.**

**Assignment of Error No. IV**

**The Trial Court Erred in Failing to Recognize the Account in Question as a Fiduciary Account.**

{¶8} In her assignments of error, Heitmeyer argues that the trial court abused its discretion by adopting the magistrate's decision concluding that she did not demonstrate ownership or a right to possess the account (beyond the $392.16). Specifically, Heitmeyer argues that the trial court erred by failing to conclude that the parties established a UTMA account, that she is the owner of the UTMA account, and by failing to award her the full balance of the account.

*Standard of Review*

{¶9} "Generally, '[a]n appellate court reviews the trial court's decision to adopt, reject or modify the Magistrate's decision under an abuse of discretion standard.'" *Fogt*, 2019-Ohio-1403, at ¶ 17, quoting *Tewalt v. Peacock*, 3d Dist. Shelby No. 17-10-18, 2011-Ohio-1726, ¶ 31. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

-4-

{¶10} When reviewing a party's objections to a magistrate's decision, "[t]he trial court may adopt, reject, or modify the magistrate's decision." *Sheehan v. Sheehan*, 3d Dist. Defiance No. 4-19-25, 2020-Ohio-5300, ¶ 11, citing Civ.R. 53(D)(4)(b). Significantly, when reviewing those objections, "the trial court is 'not required to follow or accept the findings or recommendations of its magistrate.'" *Id.*, quoting *Stumpff v. Harris*, 2d Dist. Montgomery No. 21407, 2006-Ohio-4796, ¶ 16. "Instead, the trial court 'shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law.'" *Id.*, quoting Civ.R. 53(D)(4)(d), and citing *Stumpff* at ¶ 16. "Accordingly, the trial court reviews the magistrate's decision under a de novo standard of review," which is "'independent and without deference to the [magistrate's] determination.'" *Id.*, citing *Stumpff* at ¶ 16; *Canter v. Garvin*, 3d Dist. Union No. 14-19-30, 2021-Ohio-99, ¶ 22, quoting *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25.

{¶11} To aid the trial court's independent review, Civ.R. 53(D) specifies that objections to factual findings must "be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(ii). Importantly, "'[t]he duty to provide a transcript to the trial court rests with the person objecting to the

magistrate's decision.'" *Fogt* at ¶ 12, quoting *Slepsky v. Slepsky*, 11th Dist. Lake No. 2016-L-032, 2016-Ohio-8429, ¶ 20. *See also* Civ.R. 53(D)(3)(b)(ii).

{¶12} "Where a party fails * * * to file a transcript of the evidence presented at the magistrate's hearing, the trial court, when ruling on the objections, is required to accept the magistrate's findings of fact and to review the magistrate's conclusions of law based on the factual findings." *Fogt* at ¶ 13, quoting *Nieto v. Marcellino*, 11th Dist. Geauga No. 2017-G-0146, 2018-Ohio-4952, ¶ 15. "'"Where the failure to provide the relevant portions of the transcript or suitable alternative is *clear* on the face of the submissions, the trial court cannot then address the merits of that factual objection because the objecting party, whether through inadvertence or bad faith, has not provided all of the materials needed for the review of that objection."'" (Emphasis sic.) *Id.*, quoting *Nieto* at ¶ 15, quoting *Wade v. Wade*, 113 Ohio App.3d 414, 418 (11th Dist.1996).

{¶13} "'"On appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision."'" *Id.* at ¶ 17, quoting *In re Estate of Stanford*, 2d Dist. Montgomery No. 23249, 2010-Ohio-569, ¶ 22, quoting *In re Estate of Lucas*, 2d Dist. Montgomery No. 23088, 2009-Ohio-6392, ¶ 32.

*Analysis*

**{¶14}** As an initial matter, it is undisputed that Heitmeyer failed to provide the trial court with a transcript of the evidence presented at the hearing conducted before the trial court's magistrate. Consequently, this court will consider only whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision. *See generally In re Estate of Lucas* at ¶ 32.

**{¶15}** Nevertheless, on appeal, Heitmeyer contends that the trial court abused its discretion by adopting the magistrate's decision concluding that Gary converted only $392.16 from the account. "Conversion is the "'wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights.'"" *Warnecke v. Chaney*, 194 Ohio App.3d 459, 2011-Ohio-3007, ¶ 15 (3d Dist.), quoting *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592 (2001), quoting *Joyce v. Gen. Motors Corp.*, 49 Ohio St.3d 93, 96 (1990). "'The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages.'" *Id.*, quoting *Miller v. Cass*, 3d Dist. Crawford No. 3-09-15, 2010-Ohio-1930, ¶ 32. "To prevail on a claim of conversion, the plaintiff bears the burden of proving all the elements necessary to sustain that claim by a preponderance of the evidence." *Hutchings v. Hutchings*, 6th Dist. Sandusky No.

S-19-008, 2019-Ohio-5362, ¶ 19. *See also Burson v. Peoples Bank*, 3d Dist. Wyandot No. 16-92-31, 1993 WL 373523, *2 (Sept. 1, 1993) (applying the preponderance-of-the-evidence standard to a conversion claim). *But see Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, ¶ 58 (2d Dist.) (suggesting that the clear-and-convincing-evidence standard applies to conversion claims).

{¶16} "A 'preponderance of the evidence means the greater weight of the evidence that is necessary to destroy the equilibrium.'" *Golan-Elliot v. Elliot*, 3d Dist. Union No. 14-17-01, 2017-Ohio-8524, ¶ 53, quoting *Reed v. Reed*, 3d Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10. *See also In re J.B.*, 3d Dist. Allen No. 1-15-79, 2016-Ohio-2670, ¶ 33 ("'Preponderance of the evidence' means evidence that is more probable, more persuasive, or of greater probative value.").

{¶17} We conclude that the trial court did not abuse its discretion by overruling Heitmeyer's objections and adopting the magistrate's decision. That is, the trial court correctly applied the law to the facts as set forth in the magistrate's decision.

{¶18} To begin with, there is no dispute that Heitmeyer is entitled to the $392.16. Specifically addressing Heitmeyer's argument that Gary converted the funds from two of her paychecks deposited into the account, the trial court's magistrate concluded that Heitmeyer is entitled to $392.16 from those two

paychecks (payable to Heitmeyer) deposited into the account. The trial court likewise concluded that Heitmeyer proved that Gary converted the funds from the paychecks deposited into the account. Thus, the trial court issued judgment in favor of Heitmeyer by awarding her $392.16 as to her conversion claim from the paychecks deposited into the account.

{¶19} Nevertheless—based on the evidence presented to the trial court's magistrate—Heitmeyer did not sustain her burden of demonstrating ownership or a right to possess the remainder of the account. "A UTMA account is created by following specific statutory guidelines."[3] *In re Marriage of Soenksen & Gillett*, 303 P.3d 726, 2013 WL 3455796, *6 (Kan.App.2013). Under Ohio's UTMA, which is codified under R.C. Chapter 5814, "a minor can have money, securities, and other property invested in his or her name with the custodian having a fiduciary responsibility for managing the funds in the accounts prudently." *Whitman v. Whitman*, 3d Dist. Hancock No. 5-11-20, 2012-Ohio-405, ¶ 3.

{¶20} Specifically, under Ohio's UTMA, "[a] person * * * may * * * make a gift or transfer of * * * money [to] a person who is a *minor* on the date of the gift

---

[3] Because the UTMA is a uniform-statutory scheme, courts "'may look to other jurisdictions' resolutions of the question to inform our own, thus encouraging cross-jurisdictional uniformity.'" *Belk v. Belk*, 221 N.C.App. 1, 10, 728 S.E.2d 356 (2012), quoting *In re Gumpher*, 840 A.2d 318, 321 (Pa.Super.2003). *See also Ivers v. Salladay*, 253 Or.App. 195, 204, 289 P.3d 334 (2012) ("Because the UTMA is a uniform law that, to the extent possible, should be interpreted uniformly, 'case law from other states provides part of the statutory context.'"), quoting *Edward D. Jones & Co. v. Mishler*, 161 Or.App. 544, 556, 983 P.2d 1086 (1999).

or transfer." (Emphasis added.) R.C. 5814.02(A). "Under R.C. 5814.03, 'a gift or transfer to a minor child made pursuant to the [UTMA] is irrevocable and conveys to the minor indefeasibly vested legal title to the property.'" *Miller v. Miller*, 8th Dist. No. 107319, 2019-Ohio-1886, ¶ 42, quoting *Wojanowski v. Wojanowski*, 8th Dist. Cuyahoga No. 99751, 2014-Ohio-697, ¶ 26. *See also* Annotation, *Uniform Transfers to Minors Act*, 64 A.L.R.7th Art. 1 (2021) (analogizing that "the UTMA might be viewed as a form of guardianship that continues until the minor reaches 21").

{¶21} Importantly, to constitute an irrevocable transfer under the statute, "[i]f the subject of the gift or transfer is money," the donor must deliver the money "by paying or delivering it to a broker, or a financial institution for credit to an account in the name of the donor or transferor, another person who is eighteen years of age or older, or a trust company, followed, in substance, by the words: 'as custodian for * * * (name of minor) under the Ohio Transfers to Minors Act.'" R.C. 5814.02(A)(3).

{¶22} "These funds, or accounts, are the sole property of the minor child in which the parents of the child '"have absolutely no property interest."'" *Miller* at ¶ 42, quoting *Hyder v. Hyder*, 9th Dist. Wayne No. 06CA0014, 2006-Ohio-5285, ¶ 9, quoting *Ramus v. Ramus*, 8th Dist. Cuyahoga No. 34965, 1976 WL 191006, *3 (Aug. 19, 1976). However, "where the transferor is the custodian, the transferor

retains control of the funds within the limitations of the statute, leaving the minor with no control over the gifted property." *Sternlicht v. Sternlicht*, 583 Pa. 149, 161-162, 876 A.2d 904 (2005).

**{¶23}** Unless the custodian specifies otherwise, "[a]t the time the minor attains the age of 21, he or she is no longer considered a minor for the purpose of these accounts and has complete rights to the funds in the accounts." *Whitman*, 2012-Ohio-405, at ¶ 3. *See* R.C. 5814.01(K)(1), (2) and 5814.09. That is, the custodian is required to hold the funds until the minor (generally) reaches the age of 21, then is required to turn those funds over to the minor, unless the funds are expended for the minor's benefit in the interim. *Accord In re Johns*, 181 B.R. 965, 973 (Bankr.D.Ariz.1995); R.C. 5814.04(D)(1). "[U]nder the UTMA, any changes to a custodial account held on behalf of a minor[] must be made by a probate court." *Miller* at ¶ 42, citing *Brown v. Brown*, 12th Dist. Madison No. CA2008-08-021, 2009-Ohio-2204, ¶ 50.

**{¶24}** In its September 21, 2021 decision, the trial court's magistrate concluded that Heitmeyer failed to establish "even by a preponderance of the evidence" "whether the account is an [UTMA] account compliant with Ohio law." (Doc. No. 59). In other words, the trial court's magistrate concluded that Heitmeyer failed to demonstrate ownership or the right to possess the *account* at the time of the alleged conversion. *See Hutchings*, 2019-Ohio-5362, at ¶ 25.

**{¶25}** In concluding that Heitmeyer failed to meet her burden of establishing that an account was created under Ohio's UTMA, the trial court's magistrate found that a bank account was opened on February 3, 1993 and that Heitmeyer attained the age of 21 in 2004. However, the trial court's magistrate found that "[n]o records exist for this account prior to April 1, 2010." (Doc. No. 59). Moreover, the trial court's magistrate found that Gary "requested and received an updated signature card to reflect [Heitmeyer's] new last name after her * * * marriage" in 2013. (*Id.*). The trial court's magistrate further found that the updated signature card designates Heitmeyer as a minor and Gary as a custodian and reflects "the language 'ACCOUNT TYPE: Uniform Transfers to Minors Act (UTMA).'" (Emphasis sic.) (*Id.*, quoting Plaintiff's Ex. B). Nevertheless, the trial court's magistrate found that "[c]ontrarily, '[n]ame 1' at the signature line contains the name 'Gary Arthur.' This is typed on the Signature Card, indicting the bank's creation of this text. [Gary] signed on this line." (*Id.*, quoting Plaintiff's Ex. B). Importantly, the trial court's magistrate concluded that the UTMA designation on the signature card "is not, necessarily, sufficient to comply with the statutory requirements for the creation of the account." (*Id.*).

**{¶26}** Furthermore, as evidence that the account is not a custodial account under the UTMA, the trial court's magistrate found that Gary and Dianne divorced

in 2019 and that the funds in the account were divided equally as marital property and that the account was closed thereafter.

**{¶27}** In the alternative, the trial court's magistrate concluded that Gary successfully rebutted any presumption of donative intent. That is, the trial court's magistrate concluded that Heitmeyer failed to prove that any transfers to the account (other than the $392.16) constituted gifts or transfers under the UTMA because "they were not made to a 'minor.'" (*Id.*, quoting R.C. 5814.02(A)). Similarly, as to Gary's donative intent, the trial court's magistrate found that Gary "utilized the account to direct deposit checks he received for providing training to college football referees and other related services" and "that he deposited his state and federal income tax refunds into the account each year." (*Id.*). Importantly, the trial court's magistrate found that Gary "testified that at no time did he intend to gift these amounts to [Heitmeyer] for any deposits made after she reached the statutory age of majority." (*Id.*).

**{¶28}** In its December 13, 2021 decision overruling Heitmeyer's objections to the magistrate's decision, the trial court, accepting the magistrate's findings of fact, similarly concluded that Heitmeyer failed to prove that an account was created under Ohio's UTMA and that she held complete rights to the funds (other than the $392.16) in the account. Moreover, the trial court concluded that the magistrate properly reasoned that Heitmeyer did not prove that any of the funds were delivered

into the account when she was a minor or that Gary intended to make an irrevocable gift of the money to her.

{¶29} Based on the evidence before the trial court's magistrate, the trial court did not abuse its discretion by concluding that Heitmeyer did not demonstrate her ownership or right to possesses the account (other than the $392.16). Further, we conclude that the trial court correctly applied the law to the facts as set forth in the magistrate's decision by determining that Heitmeyer did not demonstrate that the parties opened a custodial account under Ohio's UTMA. That is, the trial court properly concluded that the signature card does not comport with the statutory language under R.C. 5814.02(A)(3) to authenticate transfers into the account as irrevocable transfers under the statute. *See Hyder*, 2006-Ohio-5285, at ¶ 9. *See also State v. Keith*, 81 Ohio App.3d 192, 195 (9th Dist.1991) (noting that "the listing on the signature card did not comply with the requirements of" the statute); *In re Marriage of Soenksen & Gillett*, 2013 WL 3455796, at *6.

{¶30} Likewise, since the funds in the account were divided as marital property in Gary and Dianne's divorce proceeding also corroborates the trial court's conclusion that the account was *not* a custodial account under the UTMA. *See Brown*, 2009-Ohio-2204, at ¶ 50 ("'A custodial account held for the benefit of a child is neither marital [n]or separate property.'"), quoting *Wilson v. Wilson*, 9th Dist. Wayne No. 95CA0089, 1996 WL 411631, *5 (July 24, 1996).

**{¶31}** In the alternative, the trial court properly applied the law to the facts as set forth in the magistrate's decision to conclude that Heitmeyer did not prove that any of the funds in the account were transferred into the account when she was a minor. Indeed, based on the evidence before the trial court's magistrate, Heitmeyer did not submit any evidence documenting the account's activity prior to April 1, 2010 even though the account was allegedly established on February 3, 1993.

**{¶32}** Based on the clear and unambiguous language of the statute, R.C. Chapter 5814 clearly contemplates gifts to a minor (as defined by the statute). *See HUNY & BH Assoc., Inc. v. Silberberg*, N.J.Super. No. A-1696-17, 2021 WL 6109385, *24 (Dec. 27, 2021) (concluding that the UTMA "does not apply to deposits made after the child ceases being a minor"), citing *Peter v. Gibson*, 336 S.W.3d 2, 5-6 (Ky.2010) (holding that the law of constructive trusts, not the UTMA, governs the rights and remedies to custodial property that a custodian failed to transfer when a minor reaches the age of majority). *See also Schout v. Schout*, 140 N.C.App. 722, 727, 538 S.E.2d 213 (2000) (applying the rules of statutory interpretation to the UTMA). There is no dispute that Heitmeyer is not a minor within the meaning of the statute—that is, Heitmeyer attained the age of 21 in 2004—and there is no evidence that the time for delivery was delayed. *See Peter* at 5.

**{¶33}** Furthermore, the trial court did not abuse its discretion by adopting the magistrate's decision concluding that Gary successfully rebutted any presumption of donative intent. In Ohio, the elements of an inter vivos gift are: (1) the donor's intent to make an immediate gift; (2) delivery of the gift; and (3) acceptance of the gift by the donee after the donor has relinquished dominion and control over the gift. *Ardrey v. Ardrey*, 3d Dist. Union No. 14-03-41, 2004-Ohio-2471, ¶ 10; *Streeper v. Myers*, 132 Ohio St. 322 (1937), paragraph one of the syllabus. "Generally, the donee has the burden of showing, by clear and convincing evidence, that the donor made an inter vivos gift." *Soley v. Soley*, 6th Dist. Huron No. H-16-021, 2017-Ohio-2817, ¶ 20. *See also Ardrey* at ¶ 10; *Sternlicht*, 583 Pa. at 166 (Cappy, C.J., concurring) ("Under the common law, when the validity of a gift is challenged, the alleged donee of an inter vivos gift has the burden of proving by clear and convincing evidence that delivery to the donee occurred and that the alleged donor had donative intent.").

**{¶34}** "'Once prima facie evidence of a gift is established, a presumption arises that the gift is valid, and the burden is then on the contestant to rebut the presumption by clear * * * and convincing evidence.'" *Sternlicht* at 166 (Cappy, C.J., concurring), quoting *Banko v. Malanecki*, 499 Pa. 92, 97, 451 A.2d 1008 (1982). *See also Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 26. "Clear and convincing evidence is that measure or degree of proof

which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt * * * ." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

**{¶35}** However, "transfers made to a custodian account [under the UTMA] are not controlled by common law requirements of delivery and acceptance of the gift." *Sternlicht* at 161-162. "Indeed, there is no requirement that the minor for whose benefit the account is opened even be aware of the account, let alone accept it, notwithstanding that this is inconsistent with the traditional common law elements of a gift." *Id.* "On the contrary, under the statute, where the transferor is the custodian, the transferor retains control of the funds within the limitations of the statute, leaving the minor with no control over the gifted property." *Id.* Nevertheless, the custodian is required to hold the funds until the minor generally reaches the age of 21 and to turn those funds over to the minor, unless the funds are expended for the minor's benefit in the interim. *Accord In re Johns*, 181 B.R. at 973; R.C. 5814.04(D)(1).

**{¶36}** Generally, establishing "a bank account [under the UTMA] is prima facie evidence of donative intent." *Keith*, 81 Ohio App.3d at 195, citing *Gordon v. Gordon*, 70 A.D.2d 86, 92, 419 N.Y.S.2d 684 (1979), *Heath v. Heath*, 143 Ill.App.3d 390, 395 (1986), and *Golden v. Golden*, 434 So.2d 978 (Fla.App.1983).

*See also Golden v. Golden*, 500 So.2d 260, 261 (Fla.App.1986) ("The establishment of an account in a child's name pursuant to the [UTMA] creates a rebuttable presumption of donative intent"). However, "[e]xtrinsic evidence may be introduced to demonstrate contrary intent." *Keith* at 195, citing *Gordon* at 91, *Heath* at 394-395, and *Golden*, 434 So.2d at 978. *See also of In re Marriage of Hendricks*, 681 N.E.2d 777, 781 (Ind.App.1997).

**{¶37}** Thus, based on our review of the record, we conclude that the trial court properly applied the law to the available facts to conclude that Gary lacked donative intent. Importantly, the evidence before the trial court's magistrate reflects that Gary treated the account as his own. *Accord Keith* at 195 (concluding that "despite the form of the account, [the defendant] did not intend to make a gift of the money contained in the account but rather considered it her own"). Specifically, the trial court's magistrate found that Gary testified that he did not intend for any deposits that he transferred into the account *after* Heitmeyer reached the age of majority to constitute a gift. *See Silberberg*, 2021 WL 6109385, at *24 (concluding that "the post-twenty-first-birthday deposits * * * were not intended as gifts").

**{¶38}** Furthermore, the evidence before the trial court's magistrate bolsters Gary's testimony and reflects that he treated the account as his own. Importantly, the trial court's magistrate found that Gary utilized the account to deposit checks that he received for training college-football referees and other related services as

well as to deposit his annual tax-refund checks. *See Keith* at 195 (describing that the defendant's "actions with respect to the account did not evidence an intention on her part to make an irrevocable gift of the money to" her daughter because "shortly after opening the account, [she] withdrew $20,000 to purchase a piece of commercial property"). Thus, the trial court did not err by concluding that Gary lacked donative intent.

{¶39} For these reasons, the trial court correctly applied the law to the facts as set forth in the magistrate's decision and did not abuse its discretion by adopting the magistrate's decision.

{¶40} Therefore, Heitmeyer's assignments of error are overruled.

{¶41} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and WILLAMOWSKI, J.J., concur.**

**/jlr**